ETHEL ROBINSON, Appellant, v. E. F. HEISER, LELA M. HEISER, W. O. ZOOK, Trustee, and W. C. PAUL.—132 S. W. (2d) 1020.

Division One, November 3, 1939.

*O. J. Adams* for appellant.

*A. B. Cleaveland* for respondents.

GANTT, J.—Plaintiff, Ethel Robinson, owned a note executed by defendant E. F. Heiser. In an action on the note she obtained judgment on December 5, 1933. On January 2, 1935, execution was issued on the judgment and levy made on the interest of Heiser in certain lands hereinafter mentioned. She then instituted this action on January 5, 1935, to set aside a deed of trust executed by defendants

E. F. Heiser and Lela M. Heiser, his wife, on September 16, 1932, conveying to a trustee all of his interest (one-third) in certain lots in the City of Kingston and certain land, all in Caldwell County, to secure a $1200 note of even date, and due in one year. The note was executed by defendant E. F. Heiser and payable to defendant W. C. Paul, father-in-law of E. F. Heiser. It is alleged that said conveyance is fraudulent as to creditors. On July 9, 1937, the court found the deed of trust a valid lien against the real estate, described therein, to secure the payment of a $600 indebtedness, and accordingly entered judgment in favor of defendants. Plaintiff appealed.

The facts follow: There is no question of homestead involved, and the evidence shows that defendant E. F. Heiser, at the time of the execution of the deed of trust and prior thereto, was insolvent. In May, 1930, the Caldwell County Trust Company owned a note for $1100 executed by E. F. Heiser. Defendant Paul was the presiden and Lee Bridgewater the cashier of the Trust Company, which was closed for liquidation in August, 1934. Bridgewater is the uncle of plaintiff Ethel Robinson. All of the parties to this suit and Lee Bridgewater were and had been residents of Kingston for many years. On May 16, 1930, Bridgewater, as cashier, sold the note to his niece, Ethel Robinson.

On or about September 10, 1932, Bridgewater, who was the business agent of his niece, met E. F. Heiser on the street in Kingston and demanded payment of the note. He stated to Heiser that Ethel Robinson wanted the money and that she would take action to secure both principal and interest. Heiser stated that he had no money but was a candidate for postmaster, and if the note was renewed he might be able to make payment on the principal. Bridgewater told Heiser that he knew he had some money and could pay on the interest. Heiser had on deposit in the Trust Company about $57. Of course, Bridgewater, as cashier, was familiar with Heiser's account with the Trust Company. As stated, the note and deed of trust under consideration were executed on September 16, 1932. On September 18, 1932, Heiser went to the Trust Company, paid $57.10 on the interest due, and succeeded in persuading Bridgewater to renew the note. At that time the accumulated interest was added to the principal, making a total of $1214. Heiser renewed the note for that sum, payable to plaintiff Robinson.

There is evidence tending to show that Paul loaned his son-in-law Heiser $325 on September 16, 1926; that on said date Heiser and his wife executed a note for said sum payable to Paul, due one year after date, with seven per cent interest; that the interest on said note was paid until 1931; that on September 16, 1932, the principal and interest due on said note was $370.50; that after the execution of said note Paul loaned to Heiser $100; that on or about September 16, 1932, the date of the execution of the $1200 note and deed of trust, Paul

loaned to Heiser $129.50, which Paul at that time paid to Heiser in cash, making $600, the total amount of Heiser's indebtedness to Paul. In other words, it is admitted that Heiser owed his father-in-law Paul only $600 on the date of the execution of the $1200 deed of trust and note in question.

In this situation the bruden of proof is upon the defendants to satisfactorily explain the execution of the $1200 deed of trust to secure an indebtedness of only $600. [First National Bank v. Fry, 168 Mo. 492, 68 S. W. 348, l. c. 357; Boland v. Ross, 120 Mo. 208, 25 S. W. 524; Imhoff v. McArthur, 146 Mo. 371, 48 S. W. 456; Natl. Tube Works v. Ring, 118 Mo. 365, 22 S. W. l. c. 949; Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907, l. c. 910; Bates County Bank v. Gailey et al., 177 Mo. 181, 75 S. W. 646; Klauber v. Schloss, 198 Mo. 502, 95 S. W. 930; State ex rel. Robertson v. Hope, 102 Mo. 410, 14 S. W. 985, l. c. 992; Kuykendall, v. McDonald, 15 Mo. 416; Castorina v. Hermann, 340 Mo. 1026, 104 S. W. (2d) 297.]

It also is admitted that defendant Paul took no part in the preparation of the note and deed of trust. On September 16, 1932, E. F. Heiser had the note and deed of trust prepared, executed the same and delivered the deed of trust to the recorder of deeds for record. Heiser testified that at said time he also delivered to the recorder the note; that in two or three weeks the recorder mailed the note to him; that on receipt of the note he endorsed thereon with a lead pencil a credit of $600 and delivered the note to his father-in-law Paul. Both Heiser and Paul testified that they could not remember when or where they had a conference or conferences with reference to Heiser's indebtedness to Paul, which resulted in the execution of the note and deed of trust.

In testifying, Paul and Heiser made rambling efforts to explain the note and deed of trust. In substance, Paul testified that he expected to loan Heiser more money and for that reason the note and deed of trust were executed for $1200; that he did not know for what purpose Heiser intended to use the money; that he had money loaned which he expected to collect and loan to Heiser; that the "calamity came on" and he informed Heiser that he could not make the loan.

In substance, Heiser testified that at the time of the execution of the note and deed of trust he thought he would need the extra $600; that no definite time was fixed for Paul to pay him the $600; that he thought he might need the money to market an amusement game which he was manufacturing; that it was not a gambling device; that in view of the "condition of the times" and the fact that his machine could not compete with the gambling devices on the market, he decided that he did not need the extra $600.

The testimony of Paul and Heiser is no explanation of the transaction under consideration. The business "calamity came on" long

before the execution of the note and deed of trust. It does not appear from whom and when Paul expected to collect the extra $600 covered by the deed of trust, and it does not appear what effort, if any, he made to collect said money. Furthermore, Heiser knew the "condition of the times" as well before as after the execution of the note and deed of trust. Furthermore, Heiser knew as well before as after the execution of the deed of trust that his amusement machine could not compete with the gambling devices on the market.

We think it may be inferred that on Bridgewater threatening suit on the Robinson note, Heiser became anxious and conferred with his father-in-law Paul; that the conference resulted in the execution of the note and deed of trust in anticipation of a suit against Heiser on the Robinson note; that the renewal of the Robinson note relieved the situation and caused Heiser to believe that he could legalize the transaction by endorsing a credit of $600 on his father-in-law's note.

It follows that the transaction was in fraud of creditors; that both Heiser and Paul participated in the same, and that the judgment should be reversed and the cause remanded with directions to set aside the deed of trust and enter judgment ordering the interest of the Heisers in said lots and land sold to satisfy the judgment on the Robinson note. It is so ordered. All concur.